# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **CYNTHIA RUTHRAUFF,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | |
| *v.* | **COMPLAINT – CLASS ACTION** |
| **LUMINESS DIRECT, LLC**, a Texas limited liability company. | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

Plaintiff Cynthia Ruthrauff ("Ruthrauff" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Luminess Direct, LLC ("Luminess" or "Defendant") to: (1) stop its practice of placing telemarketing text message calls to cellular telephones without procuring the necessary prior express written consent; (2) stop its practice of sending unsolicited text messages to cellular telephones even after the cellphone owner opted-out of the receipt of additional messages; and (3) obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all

other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.     Plaintiff is a natural person and domiciled in the city of Acworth, Cobb County, Georgia.

2.     Defendant Luminess Direct, LLC is a limited liability company organized and existing under the laws of the State of Texas whose primary place of business is located at 12802 Capricorn Street, Stafford, Texas 77477.

## JURISDICTION & VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), a federal statute. The Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Classes consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

4.     The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant regularly conducts business in the State of Georgia and in this District and a substantial part of the events or omissions

giving rise to the claim occurred in this District.

## COMMON ALLEGATIONS OF FACT

### A.    Bulk SMS Marketing

5.      In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked for alternative technologies through which to send bulk advertisements on the cheap.

6.      Bulk text messaging, or SMS marketing, has emerged as a direct method of communicating and soliciting customers and business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

7.      When an SMS message call is successfully made, the recipient's cell phone rings or vibrates, alerting him or her that a call is being received. As cellular telephones are mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

8.      Senders of SMS messages can embed hyperlinks in their messages that, when selected, take message recipients directly to their websites where they can make direct purchases.

**B.      Defendant Transmits Text Messages to Consumers Who Have Not Provided Prior Express Written Consent.**

9.      Luminess is a cosmetics company that sells a variety of products and markets itself as the #1 Global Leader in Airbrush Systems and Airbrush Cosmetics.

10.     In an effort to promote Luminess's business and to sell its products and solicit consumer purchases, Defendant engaged in bulk SMS messaging campaigns.

11.     Defendant places these text messages to consumers from the same "short code" 445-54. A short code is akin to a telephone number for text messages and is indicative of autodialer technology.

12.     Despite the fact that Defendant's bulk SMS messaging campaigns contain advertisements and constitute telemarketing, Defendant fails to obtain the required prior express written consent from consumers as set forth in 47 C.F.R. § 64.1200, *et seq*.

13.    Defendant made, or had made on its behalf, the same (or substantially the same) text message calls, *en masse*, to thousands of cellular telephone numbers throughout the United States, using the same short code.

14.    In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention). Defendant also used a short code and technology that seemingly solicited automated opt outs.

### C.    Defendant Transmits Text Messages to Consumers Who Have Expressly Opted-Out.

15.    An additional and pressing problem for the Defendant stems from its refusal to honor properly submitted opt-out requests.

16.    That is, Defendant sends unauthorized SMS text messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages by responding "STOP" or with similar commands like END, CANCEL,

QUIT etc. Defendant was required to honor each STOP request as a clear expression of intent to terminate any prior form of consent. Accordingly, any SMS text message (other than a final, one-time confirmation text message confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express STOP or similar request was sent without prior express consent in violation of the TCPA.

17.    To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

18.    The FCC has made clear that companies must provide an opt-out mechanism in their text messages and that—at most—a single text may be sent after the consumer exercises his/her right to opt-out confirming the opt-out. *See Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1255 (11th Cir. 2014); *see also In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.*, CG Docket No. 20–278 (Nov. 29, 2012) ("SoundBite Ruling "); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to

be contacted on cellular phones by autodialing systems."); *see also Munro v. King Broad. Co.*, No. C13-1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013) ("[T]he weight of authority suggests that consent may be revoked under the TCPA and that if messages continue after consent is revoked, those messages violate the TCPA.") (unpublished decision) (collecting cases).

19.     Indeed, the MMA's October 2012 U.S. Consumer Best Practices for Messaging echoes this standard by stating, "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program. . . END, CANCEL, UNSUBSCRIBE, or QUIT should also be opt-out key words for all programs; however content providers should feature the word STOP in their advertising and messaging. . . When sent, these words cancel the subscriber's previous opt-in for messaging." Further, "[t]he content provider must record and store all opt-out transactions."

20.     CTIA[1] similarly advises that "[s]hortcode programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT . . . and, if the user is subscribed, by opting the user out of the program."

---

[1] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

Further, "[r]ecurring programs must promote opt-out instructions at regular intervals in content or service messages, at least once per month," and "[u]sers must be able to opt out at any time." *See* CTIA Compliance Assurance Solution Mobile Commerce Compliance Handbook, Version 1.2, effective August 1, 2013.

21.     Notwithstanding such authorities, Defendant ignores the FCC and industry guidelines and instead fails to honor requests by consumers to opt-out or unsubscribe to the SMS text messages.

22.     That is, despite receiving multiple express "STOP" requests from Plaintiff and other cellular subscribers, Defendant continues to send automated text messages to these subscribers.

23.     Defendant knows, or acts in conscious disregard of the fact, that its SMS text messages to these cellular subscribers are unauthorized. Reply message STOP requests are, by design, sent to Defendant's short code, 445-54, thereby directly informing (and at the very least putting Defendant on actual and constructive notice) Defendant that any subsequent messages are unauthorized. Ultimately, consumers are forced to bear the costs and annoyance of receiving these unsolicited and unauthorized text messages.

**D.    Plaintiff's Experience with Defendant**

24.    On July 15, 2017, absent any prior express written consent, Defendant began sending Plaintiff SMS messages directly to her cellular telephone.

25.    Following the receipt of the July 15, 2017 message, Plaintiff, in accordance with Defendant's own instructions for opting out, replied "Stop" to opt-out of future text messages.

26.    Despite following Defendant's instructions, on July 29, 2017, Plaintiff received another text message from Defendant, which advertised its products. Again, Plaintiff responded "Stop":



27.    Defendant again ignored Plaintiff's request and sent yet another text message on September 2, 2017.

28.     On September 16, 2017, Plaintiff received another text message from

Defendant. Plaintiff immediately responded "Stop":



29.     Again, Defendant ignored Plaintiff's Stop request and sent another

unauthorized text message on October 21, 2017:



30.    Hence, despite repeated STOP requests and attempts to get the messages to end Defendant refused to end the transmission of text messages and likewise never confirmed the receipt of the STOP requests. Instead, Defendant sent another unsolicited text message inviting Plaintiff to its "CYBER MONDAY" sale on November 27, 2017:



31.    Plaintiff continued to receive substantially similar text messages on a regular basis, approximately twice per month.

32.    Each text message contained a link that directs Plaintiff to Defendant's website, http://luminessair.com.

33.   Plaintiff has grown increasingly frustrated by the inability to stop the repeated harassing text messages being sent by Defendant.

34.   By continuing to make unauthorized text message calls as alleged herein, Defendant has caused Plaintiff and other consumers actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasion of privacy that results from the receipt of such unwanted text messages in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages.

35.   Furthermore, the text messages interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data (by consuming storage space), software, and hardware components.

36.   The text messages were annoying and persisted despite being told to Stop. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes and data.

37.   In the present case, a consumer could be subjected to many unsolicited text messages as Defendant does not provide any functioning mechanism to opt-out and thus fails to honor opt-out requests despite soliciting and receiving Stop requests.

38.     Having tried to no avail to get the messages to stop, Plaintiff, on behalf of herself and the classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cell phones—to end the unlawful conduct of Defendant.

39.     On behalf of the Classes, Plaintiff also seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action seeking class certification accordance with Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and the following Classes:

> **No Consent Class:** All persons in the United States who (1) from a date four years prior to the filing of the initial complaint in this case to the date notice is sent to the Class, (2) received on their cellphone at least one text message from Defendant, or a third person acting on behalf of Defendant, (3) for the purpose of selling Defendant's products or services, (4) using the same short code and equipment that was used to send the messages to Plaintiff, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained any prior express consent to message Plaintiff.

> **Replied Stop Class:** All persons in the United States who (1) from a date four years prior to the filing of the initial complaint in this case to the date notice is sent to the Class, (2) received on their cellphone at

least one text message from Defendant, or a third person acting on behalf of Defendant, (3) replied to the text message with the words STOP, END, CANCEL, or similar language, and (4) thereafter received at least one additional text message to their same cellphone number other than a message simply confirming their opt-out request.

41.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers, and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the classes' definitions following discovery regarding the size and scope of the alleged classes

42.     On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members in impracticable.

43.     There are several questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class members that may be answered in a single stroke include

but are not limited to the following:

    a.    whether Defendant's conduct constitutes a violation of the TCPA;

    b.    whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

    c.    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

    d.    whether members of the Replied Stop class revoked their consent by responding STOP, END, CANCEL or with similar language.

44.    The factual and legal basis of Defendant's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the wireless spam alleged herein.

45.    Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting wireless spam. Plaintiff's claims are typical of the claims of the

members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Classes, received unsolicited spam text message calls from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of herself and all absent members of the Classes.

46.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor her counsel has any interests adverse to those of the other members of the Classes.

47.    The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. As the messages continue to be sent in spite of Plaintiff's and the

Class Members' STOP requests, injunctive relief is necessary and appropriate to require Defendant to discontinue sending unsolicited and unauthorized spam text messages. Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Classes in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

48.     In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. There are no governmental lawsuits or other enforcement actions.

49.     Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited spam text message from Defendant. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex

and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227, *et seq.*)
### (On behalf of Plaintiff and the No Consent Class)

50.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

51.    Defendant sent unsolicited and unwanted telemarketing text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Class, without their prior express written consent in an effort to increase sales for its products.

52.     Defendant failed to obtain any prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

53.     Further, Defendant sent the text message calls using an ATDS. On information and belief, the equipment had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, simultaneously and without human intervention.

54.     By sending unsolicited text message calls to Plaintiff and members of the No Consent Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

55.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited text messages on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in

damages for each such violation of the TCPA.

56.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227, *et seq.*)
### (On Behalf of Plaintiff and the Replied Stop Class)

57.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

58.     Defendant and/or its agent(s) transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Replied Stop Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, en masse, without human intervention.

59.     The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

60.     These text calls were made *en masse* and without the consent of the Plaintiff and the other members of the Replied Stop Class to receive such wireless spam. Indeed, consent had been revoked by everyone since they each had responded with the common SMS codes to opt-out of further communications, such as "STOP," "REMOVE," "END," or "CANCEL."

61.     The text messages to Plaintiff and the Replied Stop Class were made after any consent had been expressly revoked by responding with an opt-out request, such as STOP, END, CANCEL, or similar language.

62.     Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

63.     As a result of such conduct, Plaintiff and the other members of the Replied Stop Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

64.     Additionally, because the messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Defendant were to temporarily place them on hold. The Court should enjoin such continued harassment.

65.     Defendant's conduct was willful. Defendant had notice of the Stop requests. In the event that the Court determines that Defendant's conduct was

willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class. Defendant received the STOP requests and similar opt-out instructions and therefore was on notice that its text messages were being transmitted in violation of the TCPA.

**WHEREFORE**, Plaintiff Ruthrauff, on behalf of herself and the classes, prays for the following relief:

1.    An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Ruthrauff as the representative of the Classes, appointing her attorneys as Class Counsel, and ordering notice that comports with due process to be disseminated to the Class members;

2.    An award of actual and statutory damages to be paid into a common fund for the benefit of the Classes;

3.    An injunction requiring Defendant to cease all unsolicited text messaging and to honor opt-out requests, and otherwise protecting the interests of the Classes;

4.    An award of reasonable attorneys' fees and costs to be paid out of the common fund;

5.    A declaration that Defendant's conduct violated the TCPA;

6.    A declaration that Defendant's dialing equipment constitutes an

automatic telephone dialing system under the TCPA; and

7.    Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: February 19, 2018              **CYNTHIA RUTHRAUFF**, individually,
                                       and on behalf of all others similarly situated,

                                       By:  s/ Jennifer Auer Jordan
                                       One of Plaintiff's Attorneys
                                       Jennifer Auer Jordan Georgia Bar Number:
                                       027857 (jordan@ssjwlaw.com)
                                       Shamp Speed Jordan Woodward LLC
                                       1718 Peachtree Street NW, Suite 660
                                       Atlanta, Georgia 30309
                                       Tel: 404-893-9400

                                       Steven L. Woodrow
                                       (swoodrow@woodrowpeluso.com)*
                                       Patrick H. Peluso
                                       (ppeluso@woodrowpeluso.com)*
                                       Taylor T. Smith
                                       (tsmith@woodrowpeluso.com)*
                                       Woodrow & Peluso, LLC
                                       3900 East Mexico Ave., Suite 300
                                       Denver, Colorado 80210
                                       Telephone: (720) 213-0675
                                       Facsimile: (303) 927-0809
                                       *Counsel for Plaintiff and the Putative
                                       Classes*
                                       **pro hac vice* admission to be filed